[No. 45449. En Banc. December 28, 1978.]

DANIEL R. SHAFFER, *Petitioner,* v. VICTORIA STATION, INC., ET AL, *Respondents.*

*Jones, Grey & Bayley* and *Charles F. Vulliet,* for petitioner.

*Merrick, Hofstedt & Lindsey* and *Andrew C. Gauen,* for respondents.

DOLLIVER, J.—On March 26, 1974, plaintiff Shaffer ordered a glass of wine at the Victoria Station, a restaurant operated by defendant. In the course of taking his first or second sip, the wine glass broke in Mr. Shaffer's hand, resulting in alleged permanent injury.

Plaintiff .brought this action based upon three theories: negligence, breach of implied warranty under the Uniform Commercial Code, and strict liability under the theory of Restatement (Second) of Torts § 402A (1965). The manufacturer of the glass was named as a defendant, but was never served. Prior to trial, as counsel and the trial judge were discussing proposed instructions, plaintiff's attorney indicated that he could not prove negligence, and wished to submit the case to the jury on the grounds of breach of warranty and strict liability. Plaintiff then took a voluntary nonsuit on the negligence issue. At the same time, the court ruled the case sounded in negligence alone, and granted the defendant's motion for dismissal. The Court of Appeals affirmed. *Shaffer v. Victoria Station, Inc.,* 18 Wn. App. 816, 572 P.2d 737 (1977). We reverse the Court of Appeals.

I

Defendant argues the Uniform Commercial Code (RCW 62A) does not apply since the restaurant was not a merchant with respect to wine glasses as defined in RCW 62A.2-104 and, since the glass itself was not sold, there was no passing of title as required under RCW 62A.2-106. Plaintiff, however, points to RCW 62A.2-314 as being decisive. We agree. RCW 62A.2-314 reads, *inter alia:*

(1) Unless excluded or modified (RCW 62A.2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

. . .

(c) are fit for the ordinary purposes for which such goods are used; and

. . .

(e) are adequately contained, packaged, and labeled as the agreement may require;

■ It is our opinion that, when the Uniform Commercial Code states "the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale" and that such food and drink must be "adequately contained, packaged, and labeled as the agreement may require", it covers entirely the situation before us. Plaintiff ordered a drink (a glass of wine) from defendant. Defendant sold and served the glass of wine to plaintiff to be consumed by plaintiff on the premises. The wine could not be served as a drink nor could it be consumed without an adequate container. The drink sold includes the wine and the container both of which must be fit for the ordinary purpose for which used. Plaintiff alleges the drink sold—wine in a glass—was unfit and has, therefore, stated a cause of action.

In addition to the language of RCW 62A.2–314, we believe the language of RCW 62A.1–103 is applicable. It states:

Unless displaced by the particular provisions of this Title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

Plaintiff urges that cases which apply the Uniform Commercial Code where the goods are leased rather than sold (*see, e.g., Baker v. Seattle,* 79 Wn.2d 198, 484 P.2d 405 (1971)), or are under a bailment for mutual benefit (*see,*

*e.g., Fulbright v. Klamath Gas Co.,* 271 Ore. 449, 533 P.2d 316 (1975)), be extended to the facts before us. We believe this is unnecessary. A more straightforward and less tortuous approach is that adopted in *Hadley v. Hillcrest Dairy, Inc.,* 341 Mass. 624, 171 N.E.2d 293 (1961). In that case, a bottle of milk delivered to the plaintiff's home shattered and cut the plaintiff's hand. The Massachusetts Supreme Judicial Court, relying on the Massachusetts sales act (which was not, as argued by defendant, significantly different in its applicable part from the Uniform Commercial Code), held at page 627, "In our view it is immaterial whether or not the property in the jug passed to the plaintiff." The court goes on to cite *Geddling v. Marsh,* (1920) 1 K.B. 668. In that case, a retailer received bottled mineral water from the manufacturer and was injured by an exploding bottle. The court found the bottles were not sold to the retailer but held the retailer could recover under a breach of an implied warranty of fitness. The court said at pages 671–72:

> In this case there was only one contract—namely, a contract between the plaintiff and the defendant that the plaintiff should be supplied with mineral waters. Mineral waters could not be supplied except in bottles, and therefore the plaintiff was asking to be supplied with mineral waters in bottles. That undoubtedly is a contract of sale, and I will assume that in that contract there might be a condition that the bottles should not be bought by the plaintiff but should be hired; but the question the county court judge had to consider was whether the bottles were not "supplied under a contract of sale." This was a contract of sale none the less because there was a special provision with regard to the bottles. The section, in my opinion, extends not only to the goods actually bought under the contract but to goods "supplied under the contract of sale." This particular bottle was thus "supplied under a contract of sale," and it follows that it should be reasonably fit for the purpose for which it was supplied. In fact it was not reasonably fit and in consequence of that unfitness the plaintiff was injured.

*See also Sartin v. Blackwell,* 200 Miss. 579, 28 So. 2d 222 (1946). Plaintiff has a cause of action both on the face of the statute and under the principles of case law elucidated above.

## II

We also hold an action lies under the strict liability theory of Restatement (Second) of Torts § 402A (1965). The policy questions of strict liability and their application to retailers have been previously determined. *See Seattle–First Nat'l Bank v. Tabert Volkswagen of America, Inc.,* 86 Wn.2d 145, 542 P.2d 774 (1975); *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969). The only question remaining is whether section 402A applies to the transaction here. In addressing this issue, the Court of Appeals expressed concern over an uncontrollable broadening of the doctrine of strict liability:

> Were the wine glass in question held to be a mere facet of the sale of the "glass of wine" and thus a "product" for the purposes of section 402A, the theory of strict liability would be greatly and unnecessarily expanded. The reasonably clear standard of engagement "in the business of selling . . . a product" would be abandoned in deference to a less predictable question—whether the injury–producing aspect of the sale was necessary to the sale. If a wine glass renders a restaurateur strictly liable because he could not sell wine without it, what of other tablewear, the waiters and the bus boys, the furnishings to effect an attractive atmosphere, or the building housing the establishment? The argument could be made that numerous aspects of a restaurant's operation, or that of any other retailer, are integral to each sale. To ignore the fact that this allegedly defective glass was never sold would create great uncertainty as to the limits of strict liability.

*Shaffer,* at 820–21.

■ We do not agree with the gloomy view of the Court of Appeals of the consequences of allowing the plaintiff to proceed with this action. We hold the sale of a glass of wine is subject to the strict liability provisions of section 402A. If their predictions as to future lawsuits come to pass, we will

deal with the litigation at that time. Confirmation of the applicability of section 402A to this case is given in comment *h,* which says:

> The defective condition may arise not only from harmful ingredients, not characteristic of the product itself either as to presence or quantity, but also from foreign objects contained in the product, from decay or deterioration before sale, or from the way in which the product is prepared or packed. No reason is apparent for distinguishing between the product itself and the container in which it is supplied; and the two are purchased by the user or consumer as an integrated whole. Where the container is itself dangerous, the product is sold in a defective condition. Thus a carbonated beverage in a bottle which is so weak, or cracked, or jagged at the edges, or bottled under such excessive pressure that it may explode or otherwise cause harm to the person who handles it, is in a defective and dangerous condition. The container cannot logically be separated from the contents when the two are sold as a unit, and the liability stated in this Section arises not only when the consumer drinks the beverage and is poisoned by it, but also when he is injured by the bottle while he is handling it preparatory to consumption.

Restatement (Second) of Torts § 402A, comment *h* at 352 (1965).

Plaintiff has stated a cause of action under theories of implied warranty of fitness and strict liability. The Court of Appeals is reversed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.